**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN R. MARTIN, | ) | CASE NO. 3:18CV00005 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) | **AND ORDER** |
| | ) | |

Plaintiff, John R. Martin ("Plaintiff" or "Martin"), challenges the final decision of

Defendant, the Commissioner of Social Security ("Commissioner"), denying his applications for

a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act, 42 U.S.C. §§ 416(i) and 423 *et seq.* ("Act"). This Court has jurisdiction

pursuant to 42 U.S.C. § 405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

# I.   PROCEDURAL HISTORY

In January 2015, Martin filed an application for POD and DIB, alleging a disability onset date of June 15, 2013[1] and claiming he was disabled due to lumbar spine disc herniation and narrowing.  (Transcript ("Tr.") at 236, 256.)  The applications were denied initially and upon reconsideration, and Martin requested a hearing before an administrative law judge ("ALJ"). (Tr. 146, 155, 162.)

On October 4, 2014, an ALJ held a hearing, during which Martin, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 70-98.)  On November 21, 2016, the ALJ issued a written decision finding Martin was not disabled.  (Tr. 124-142.)  The ALJ's decision became final on November 15, 2017, when the Appeals Council declined further review.  (Tr. 1.)

On January 2, 2018, Martin filed his Complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 15, 16, 17.) Martin asserts the following assignments of error:

(1)    The Commissioner's reliance on State Agency Physician opinions was not supported, as their opinions were rendered prior to objective, material medical evidence of November 16, 2015.

(2)    The Commissioner erred by not having Medical Expert testimony present at the hearing (or by way of post-hearing interrogatives) to assess the objective, material medical evidence of November 16, 2015 with regard to meeting or medically equaling Listing 1.04(B).

(3)    The Commissioner erred by not providing adequate reasoning of the evidence to support his conclusion that Plaintiff did not meet or medically equal a listed impairment at step three of the sequential evaluation.

---

[1]    Martin, through counsel, later amended his onset date to October 27, 2014.  (Tr. 74.)

> (4)     The severity of Plaintiff's pain symptoms should be considered disabling, preventing sustained, remunerative employment at any physical demand level of work-related activity.

(Doc. No. 15.)

## II.    EVIDENCE

### A.     Personal and Vocational Evidence

Martin was born in August 1971 and was 45 years-old at the time of his administrative hearing, making him a "younger" person under social security regulations.  (Tr. 135.)  *See* 20 C.F.R. §§ 404.1563(c).  He has a high school education and is able to communicate in English.  (Tr. 136.)  He has past relevant work as a carpenter/laborer, drywall installer, and construction worker.  (Tr. 135.)

### B.     Medical Evidence[2]

On February 16, 2014, Martin presented to the emergency room reporting a stiff neck and sore back following a motor vehicle accident.  (Tr. 315.)  On examination, Martin had a limited range of motion in his neck, but no motor or sensory deficits.  (Tr. 317.)  A cervical spine x-ray revealed minimal arthritis with no fracture or dislocation.  (Tr. 317, 386.)  Martin was treated with pain medication and a muscle relaxer.  (Tr. 317.)

On September 12, 2014, Martin visited nurse practitioner Ellen M. Jones, CNP, for a left knee meniscus tear.  (Tr. 350.)  He indicated his pain began six weeks prior and he denied any instances of his knee "giv[ing] out."  (*Id*.)  On examination, Martin had no knee swelling, full

---

[2]     The Court notes its recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the Parties' briefs.

strength in his upper and lower extremities, and pain with movement in the left knee. (Tr. 350, 352.) Martin underwent a left knee arthroscopy on September 26, 2014. (Tr. 320.)

Martin reported back pain to his primary care physician, G. Barton Blossom, D.O., on October 27, 2014. (Tr. 369.) Dr. Blossom ordered an x-ray and MRI of the lumbar spine. (*Id.*) The x-ray revealed mild degenerative changes, which was stable from a March 2, 2010 x-ray. (Tr. 359.) The November 3, 2014 lumbar MRI revealed the following: (1) interval progression of a central disc protrusion at L2-L3, causing mild spinal stenosis; (2) a small left paracentral disc herniation at L3-L4, which effaced the thecal sac without gross stenosis; (3) a disc protrusion at L4-5 with persistent neural foraminal narrowing bilaterally at the L4-L5 level. (Tr. 357.)

On December 8, 2014, Martin visited pain management physician James Weiss, M.D., for a consultation. (Tr. 407.) He reported lumbar spine pain radiating down both legs. (*Id.*) Martin indicated this pain had persisted for the past 20 years and was progressively worsening. (*Id.*) He rated the pain as 7/10. (*Id.*) On examination, Martin had a positive straight leg raise on the left side, full muscle strength in his lower extremities, intact reflexes, and an ability to ambulate, heel walk, and toe walk without difficulty. (Tr. 409.) He had no tenderness to palpation over the paravertebral musculature of the lumbar spine. (*Id.*) Dr. Weiss prescribed Hydrocodone, Tramadol, and steroids, and recommended an epidural injection. (Tr. 408, 409.)

On December 29, 2014, Dr. Blossom submitted a letter providing the following:

> Mr. Martin is currently unable to work due to low back pain as a result of lumbar disc disease and herniation at L2-3 and L3-4 with narrowing at L4-5. He is currently being treated by UTMC Pain Management, with nerve block injections.

He is unable to work at this time as an environmental safety officer or
similar work involving construction sites.

(Tr. 362.)

A January 26, 2015 EMG of the right upper extremity was abnormal, with findings

consistent with mild median nerve mononeuropathy at the right wrist. (Tr. 328.) There was no

evidence of any significant radiculopathy, plexopathy, myopathy, or peripheral polyneuropathy.

(*Id*.) On examination, he had normal strength, grossly intact sensation, and negative Tinel's

signs at the wrists and elbows. (Tr. 327.)

Martin returned to Dr. Blossom on January 19, 2015, reporting right shoulder pain and

chronic pain. (Tr. 368.) He saw Dr. Weiss on February 12, 2015, reporting no improvement

after a lumbar epidural steroid injection. (Tr. 398.) He continued to have pain radiating into

both legs and buttocks. (*Id.*) On examination, Martin had a positive straight leg raise on the left,

but was able to ambulate, heel walk, and toe walk without difficulty. (Tr. 400.) He had full

muscle strength in his lower extremities, no gross atrophy, and no tenderness to palpation over

the paravertebral musculature of the lumbar spine. (*Id*.) Dr. Weiss renewed Martin's

medications. (Tr. 399.)

A March 3, 2015 MRI of Martin's right shoulder revealed a large superior labral tear

from anterior to posterior ("SLAP") lesion and a suspected small glenolabral articular disruption

("GLAD") lesion. (Tr. 424.)

Martin followed up with Dr. Weiss on March 6, 2015 and rated his pain as 2/10. (Tr.

395.) Dr. Weiss again prescribed Hydrocodone and Tramadol. (Tr. 396.) On examination,

Martin had a positive straight leg raise on the left, was able to ambulate, heel walk, and toe walk

without difficulty, and had intact reflexes. (Tr. 397.) He had full muscle strength of the lower extremities, with no tenderness to palpation over the paravertebral spine. (*Id.*)

On March 27, 2015, Martin underwent a right shoulder arthroscopic debridement and a labral repair. (Tr. 420.) Martin followed up with orthopedist Anil Gupta, M.D., on May 4, 2015, indicating his physical therapy was going well and he had minimal to no pain. (Tr. 414.) On examination, Martin's surgical incision was fully healed with no signs of infection. (*Id.*) He had normal light touch sensation in his upper extremities and good grip strength. (*Id.*) His active range of motion at his elbow was normal and he was able to rotate to 140 degrees of flexion in the right shoulder. (*Id.*) Dr. Gupta concluded Martin was "doing very well" and instructed him to continue physical therapy and slowly wean himself off using a sling. (*Id.*)

Martin visited neurosurgeon Jason M. Voorhies, M.D., on May 29, 2015 for a consultation regarding his back and leg pain. (Tr. 487.) Martin reported decades of lower back pain, with now-constant left leg pain. (*Id.*) He indicated chiropractic and epidural steroid injections only provided temporary relief. (*Id.*) Martin reported his legs fatigued easily, but denied any balance problems and was walking well. (*Id.*) On examination, Martin's lower extremity strength was slightly decreased at 4/5 and he had dorsiflexion weakness on the left. (*Id.*) He also had decreased sensation to light touch over the lateral aspect of his left leg. (*Id.*) His gait was within normal limits. (*Id.*)

On June 8, 2015, Martin returned to Dr. Gupta for follow up regarding his right shoulder. (Tr. 431.) He reported he was doing "very well," with minimal to no pain in his right shoulder. (*Id.*) He indicated he was "back [to] doing all his activities of daily living without any problems," but reported he was undergoing a lumbar laminectomy in two weeks. (*Id.*) On

examination, Martin had normal rotator cuff strength. (*Id.*) Dr. Gupta recommended Martin begin home exercises and noted Martin was "very happy with the status of his right shoulder." (*Id.*)

On June 22, 2015, Martin underwent a lumbar laminectomy, medial facetectomy, and adjacent nerve root foraminotomy at the L4-5 and L5-S1 levels with Dr. Voorhies. (Tr. 441.) Martin followed up with Michael Vasko, PA., a physician's assistant at Dr. Voorhies' office, on July 21, 2015. (Tr. 480.) He reported he was "doing quite well," beyond some occasional leg pain. (*Id.*) He indicated this pain was "nowhere near as severe as it was prior to his surgery." (*Id.*) On examination, Martin had full lower extremity strength, intact sensation in the lower extremities, and a normal gait. (*Id.*)

Martin subsequently developed right-sided radiculopathy. (Tr. 511.) A repeat MRI indicated foraminal stenosis and foramen compression, so Dr. Voorhies offered a more "aggressive operation" to Martin. (*Id.*) On November 16, 2015, Martin underwent a lateral fusion and lumbar laminectomy. (Tr. 510.) Extensive epidural scar tissue was found during the procedure, along with stenosis compression of the L3-L4 and L5 nerve roots. (Tr. 510, 511.)

Martin followed up with Mr. Vasko at Dr. Voorhies' office on January 29, 2016. (Tr. 508.) Martin reported he had fallen about eight days prior and his radicular pain and lower extremity paraesthesis had returned. (*Id.*) Mr. Vasko advised Martin his symptoms were likely due to inflammation from his fall and developing scar tissue. (*Id.*) He instructed Martin to continue participating in physical therapy. (*Id.*)

On March 15, 2016, Martin saw primary care physician John C. Evanoff, M.D., to establish care. (Tr. 577.) He had tenderness and pain in his lumbar spine on examination. (*Id.*)

Martin returned to Mr. Vasko on March 25, 2016, reporting a "fair amount of left sided sciatica pain and right sided paraesthesis," with "perhaps some minimal improvement" from his last visit. (Tr. 505.) Mr. Vasko ordered an updated lumbar MRI. (*Id*.)

On April 15, 2016, Martin reported continued pain and paraesthesis to Mr. Vasko. (Tr. 502.) Mr. Vasko again suggested this pain was an inflammatory response to Martin's fall and determined "no additional surgical intervention" was required. (*Id*.) Martin also reported increasing difficulty with walking for extended periods and fatigue due to his pain. (Tr. 503.) On examination, he had no joint tenderness, intact sensation, and a normal gait. (*Id*.) His lower extremity strength was measured at 5/5 for hip flexion, 5/5 on the right for plantar flexion, and 4/5 on the left for plantar flexion. (*Id*.) Mr. Vasko reviewed Martin's most recent MRI, finding there was not "any significant stenosis that could be causing this worsening radicular pain, [as] the foramina and spinal canal are all patent." (*Id.*)

Martin returned to Dr. Evanoff on June 17, 2016, reporting back and neck pain. (Tr. 578.) On examination, he had normal range of motion and reflexes. (Tr. 579.) Dr. Evanoff prescribed Gabapentin. (*Id*.)

On August 2, 2016, Martin consulted with anesthesiologist Sheriff Hefzy, M.D. (Tr. 539.) He reported his pain was worsening. (Tr. 541.) On examination, Martin had a decreased range of motion in his lumbar spine, with tenderness and pain. (Tr. 544.) Dr. Hefzy recommended bilateral sacroiliac joint injections. (*Id*.) Martin subsequently underwent these injections and while he experienced greater than 80% improvement in his symptoms, this relief only lasted for one week. (Tr. 562.)

Martin followed up with Dr. Hefzy on August 10, 2016. (*Id.*) He denied any new neurological symptoms, weakness, or falling. (*Id.*) On examination, Martin had a decreased range of motion and tenderness in his lumbar spine. (Tr. 564.) He had normal strength, no atrophy, no sensory deficit, normal muscle tone, and normal gait and coordination. (Tr. 565.) Dr. Hefzy recommended a repeat round of sacroiliac injections. (*Id.*)

**C.**     **State Agency Reports**

On March 27, 2015, state agency physician Leon D. Hughes, M.D., reviewed Martin's medical records and completed a Physical Residual Functional Capacity ("RFC") Assessment. (Tr. 104-105.) Dr. Hughes determined Martin could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday. (Tr. 104.) He further found Martin could frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, occasionally kneel and crawl, and frequently stoop and crouch. (Tr. 104-105.)

On August 31, 2015, state agency physician Sreenivas Venkatachala, M.D., reviewed Martin's medical records and completed a Physical RFC Assessment. (Tr. 117-118.) Dr. Venkatachala adopted the findings of Dr. Hughes for the period of June 30, 2013 through February 19, 2015. (Tr. 117-118.) For the period of February 19, 2015 through the date of his opinion, Dr. Venkatachala determined Martin had the additional limitations of occasional pushing and pulling, occasional overhead reaching, never climbing ladders, ropes, and scaffolds, frequently balancing, and occasional stooping. (Tr. 118-120.)

**D.**     **Hearing Testimony**

During the October 4, 2016 hearing, Martin testified to the following:

- He lives with his three children, all of whom are under the age of 11. (Tr. 73.) He last worked as a drywall installer for a construction company. (Tr. 75.) He also worked at an oil refinery, as a carpenter, and for other construction companies. (Tr. 76-78.)

- He cannot work due to lower back pain, which radiates into his hips, buttocks, and down his legs. (Tr. 78.) He becomes extremely sore and stiff after 20-30 minutes of driving and will need to pull over and stretch. (Tr. 74.)

- He has undergone two back operations. (Tr. 79.) After his first surgery, he began to have some pain in the front of his thighs. (*Id.*) His pain also became more constant and intense. (Tr. 80.) His second surgery did provide some relief, but he still has constant pain radiating down his legs. (*Id.*) His doctor has suggested a spinal cord stimulator for his next treatment. (Tr. 82.) He is currently receiving injections, which he does not find helpful. (*Id.*)

- He spends 6-8 hours a day in a recliner with his feet up. (Tr. 81.) He cooks for and feeds his children. (*Id.*) He has modified the way he does the laundry, using pick-up tongs to pick up clothing. (*Id.*) He generally takes two walks each day – each about 1/8 of a mile. (Tr. 83.) He takes his 11 year old to football practice and watches his games. (Tr. 85.) He frequently switches positions while watching a football game. (Tr. 86.)

- He can stand for 20-30 minutes at a time before the pain becomes more intense. (*Id.*) He finds sitting uncomfortable and prefers to recline. (Tr. 84.) He can carry about a gallon of milk and his children assist him with bringing in the groceries. (*Id.*)

- He underwent surgery on his left knee in September 2014 and it continues to ache daily. (Tr. 86.) He has difficulty using stairs and he is a knee replacement candidate. (Tr. 87.)

- He underwent surgery on his right shoulder in March 2015. (Tr. 87.) His right shoulder continues to ache, but he is able to raise it in front of himself, slightly over shoulder level. (*Id.*) His shoulder pain is "more of a nuisance than a hindrance." (*Id.*)

- He has carpal tunnel in his right wrist. It does not bother him "too often," but it was bothersome in the past when he worked with his hands. (Tr. 88.)

The VE testified Martin had past work as a drywall installer (D.O.T. #842.684-014); a carpenter (D.O.T. #860.381-022); and a construction worker (D.O.T. #869.664-014). (Tr. 93.) The ALJ then posed the following hypothetical question:

> Please assume a hypothetical individual with the Claimant's age, education, and work experience, who's able to perform light exertion work activities as defined in the regulations, with the following limitations. The individual can frequently climb ramps and stairs, and stoop, and can occasionally climb ladders, ropes, scaffolds, and crawl.

(Tr. 93.)

The VE testified the hypothetical individual would not be able to perform Martin's past work. (*Id.*) The VE further explained the hypothetical individual would be able to perform other representative jobs in the economy, such as sorter (D.O.T. #222.687-014), folder (D.O.T. #369.687-018), and assembler (D.O.T. 739.687-030). (Tr. 93-94.)

The ALJ then added the following limitations to the hypothetical: (1) no exposure to unprotected heights, dangerous moving mechanical parts, or operating a motor vehicle; (2) frequent pushing and pulling with the right upper extremity, frequent reaching overhead and in front on the right; and (3) frequent balancing, kneeling, and crouching, occasional stooping, and never climbing ladders, ropes, and scaffolds. (Tr. 94.)

The VE testified this individual would not be able to perform the folder occupation, and the assembler jobs would be reduced by 40 percent. (*Id.*) The VE further testified this individual could perform a job as an inspector (D.O.T. #559.687-074) and a sorter.

## III.   STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason

of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his

past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

Here, Martin was insured on his alleged disability onset date, October 27, 2014 and remained insured through December 31, 2018, his date last insured ("DLI.") (Tr. 129.) Therefore, in order to be entitled to POD and DIB, Martin must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2.  The claimant has not engaged in substantial gainful activity since June 15, 2013, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has the following severe impairments: musculoskeletal conditions involving the left knee; cervical, thoracic, and lumbar spines; right wrist; and rheumatoid arthritis as well as status post right shoulder arthroscopy (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that from the alleged disability onset date of June 15, 2013 to February 18, 2015, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could frequently climb ramps and stairs and stoop. The claimant could occasionally climb ladders, ropes, scaffolds, and crawl.

6.   The undersigned also finds that from February 19, 2015 to the present, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally push and pull with the right upper extremity. He can occasionally reach overhead and in front on the right. He can frequently climb ramps and stairs, balance, kneel, and crouch. He can never climb ladders, ropes, and scaffolds. He can occasionally stoop and crawl. He can never be exposed to unprotected heights, dangerous moving mechanical parts, or operate a motor vehicle.

7.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

8.   The claimant was born on August 26, 1971 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

9.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564.)

10.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

(Tr. 129-136.)

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been

defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281

(6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

### A.     Listing 1.04B

In his second and third assignments of error, Martin argues the ALJ erred in finding he did not meet or equal Listing 1.04B.  (Doc. No. 15 at 2.)  Martin asserts the ALJ should have consulted a medical expert to determine if he met or equaled the Listing.  (*Id.* at 13.)  Martin also contends the ALJ also did not "provide adequate reasoning" for her findings at step three and argues the objective medical evidence supported a finding he met and/or medically equalled Listing 1.04B.  (*Id*. at 15.)

The Commissioner maintains substantial evidence supports the ALJ's conclusion Martin did not meet or medically equal Listing 1.04. (Doc. No. 16 at 10.) The Commissioner asserts while Martin "suggests he met [Listing 1.04B], he has not presented medical evidence of all the necessary criteria," including "the required diagnosis of spinal arachnoiditis." (*Id.* at 10, 11.) The Commissioner contends Martin "fails to explain how the various pieces of evidence in his brief equal in severity each of the criteria of listing 1.04B, or of any other listing." (*Id.* at 14.) Finally, the Commissioner submits the ALJ was not required the further develop the record by soliciting the testimony of a medical expert. (*Id.* at 15.)

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491 (6th Cir. 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a). Essentially, a claimant who meets the requirements of a Listed Impairment, as well as the durational requirement, will be deemed conclusively disabled and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3). It is the claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment. *See e.g. Lett v. Colvin*, 2015 WL 853425 at * 16 (N.D. Ohio Feb. 26, 2015). A claimant must satisfy all of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*, 582

F.3d 647, 653 (6th Cir. 2009). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant is also disabled if her impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

Where the record raises a "substantial question" as to whether a claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *See Reynolds v. Comm'r of Soc. Sec*., 424 Fed. App'x 411, 414-15 (6th Cir. 2011). In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for her decision. *Id.* at 416.

Moreover, "the ALJ's lack of adequate explanation at Step Three can constitute harmless error where the review of the decision as a whole leads to the conclusion that no reasonable fact finder, following the correct procedure, could have resolved the factual manner in another manner." *Lett,* 2015 WL 853425 at *16. *See also Ford v. Comm'r of Soc. Sec.,* 2015 WL 1119962 at *17 (E.D. Mich. March 11, 2015) (finding that "the ALJ's analysis does not need to be extensive if the claimant fails to produce evidence that he or she meets the Listing"); *Mowry v. Comm'r of Soc. Sec.,* 2013 WL 6634300 at *8 (N.D. Ohio Dec. 17, 2013); *Hufstetler v. Comm'r of Soc. Sec.,* 2011 WL 2461339 at *10 (N.D. Ohio June 17, 2011).

Here, the ALJ provided the following discussion at step three:

The undersigned has reviewed the medical evidence under Sections 1.02, 1.03, and 1.04 of the Listing of Impairments in Appendix 1, Subpart P, Regulations Part 404 regarding musculoskeletal impairments. There are no indicated findings by treating or examining physicians that satisfy the

requirements of any listed impairment. Therefore, the undersigned finds the claimant does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

Regarding the above mentioned Sections, the medical evidence does not reveal significant disorganization of motor function into extremities and no muscle weakness or atrophy. The claimant was not prescribed and does not use ambulatory aids. The claimant does not use a walker, two crutches, or two canes. Regarding the right shoulder surgery, there is no indication from the records that the claimant is unable to use his right arm for functional activities.

The claimant had left knee arthroscopy surgery on September 26, 2014 (Exs. 3F, p.2; 7F, p. 20). The treating physician noted the claimant was in pain management in December 2014 (Ex. 7F, p. 7).

The claimant has right shoulder surgery on March 27, 2015 (Ex. 9F, p.10). He began physical therapy on April 19, 2015 (Ex. 9F, p. 17). At post-operative examination on May 4, 2015, the claimant reported he was pleased with the results of the surgery and he was doing very well. He was to begin weaning of the sling (Ex. 9F, p. 4). On June 8, 2015, the claimant reported he was doing very well and that he had minimal to no pain in the shoulder. The claimant had [a ] planned lumbar laminectomy (Ex. 11F, p. 2).

After the claimant's lumbar spine surgery, a post-operative examination on July 21, 2015 noted the claimant still had some pain in his legs, but that it was nowhere near as severe as prior to surgery. His gait was assessed within normal limits and he was doing well (Exs. 14F, pp. 5, 9; 16F, p.2). Another postoperative visited on January 29, 2016 noted the claimant's right lower extremity pain was improving with physical therapy and he was doing quite well until he fell eight days ago in his driveway on the ice. He was diagnosed with degenerative disc disease of the lumbar spine and continued physical therapy was recommended (Ex. 15F, p. 8). On April 15, 2016, the claimant reported no change in his condition (Ex. 15F, p. 2).

(Tr. 130-131.)

The ALJ then provided a more detailed review of the medical evidence relating to

Martin's back problems under Finding #6. (Tr. 132-135.) This recitation of the evidence

19

included a thorough review of the diagnostic testing, treatment notes, and examination findings

relating to Martin's back and other physical impairments. (*Id*.)

The Court finds substantial evidence supports the ALJ's conclusion Martin does not

meet the requirements of Listing 1.04B. Listing 1.04 governs disorders of the spine and requires

the spinal condition result "in compromise of a nerve root . . . or the spinal cord." 20 C.F.R. Part

404, Subpart P, Appendix 1, § 1.04. Additionally, there must be:

> B. Spinal arachnoiditis, confirmed by an operative note or pathology report
> of tissue biopsy, or by appropriate medically acceptable imaging,
> manifested by severe burning or painful dysesthesia, resulting in the need
> for changes in position or posture more than once every 2 hours;

*Id.* Thus, to satisfy Listing 1.04(B), Martin was required to demonstrate (1) compromise of a

nerve root or spinal cord; (2) spinal arachnoiditis confirmed by acceptable imaging; and (3) a

manifestation of severe burning or painful dysesthesia resulting in the need for changes in

position or posture more than once every 2 hours. In addition, the regulations require the

abnormal findings must be established over a period of time. 20 C.F.R. Part 404, Subpart P,

Appendix 1, § 1.00(D) ("[b]ecause abnormal physical findings may be intermittent, their

presence over a period of time must be established by a record of ongoing management and

evaluation.").

While the ALJ did not specifically discuss subsection B of Listing 1.04, she did

consider Listing 1.04 overall. (Tr. 130-131.) She primarily focused on the requirements of

Listing 1.04A and C,[3] noting there was no evidence of significant disorganization of motor

---

[3]    Listing 1.04A and C provide, in relevant part:

> A. Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with

function into Martin's extremities, no muscle weakness or atrophy, and no use of an ambulatory aid. (Tr. 130.) Later in the decision, the ALJ discussed, at length, the MRI results indicating mild stenosis and neural foraminal narrowing, the two lumbar spine operations, Martin's reports of difficulty standing or sitting for extended periods, and the objective findings of a normal gait, but decreased range of motion. (Tr. 132-134.) The ALJ also reviewed treatment notes indicating Martin's condition had improved following his operations. (Tr. 133.) It is clear from this discussion the ALJ properly considered Listing 1.04.

Martin points to no evidence he has been diagnosed with spinal arachnoiditis, the threshold requirement of Listing 1.04B. Instead, Martin notes the operative report from his November 2015 lumbar surgery, which documented evidence of nerve root compression, scar tissue, and "some arachnoid twitching to the scar tissue." (Doc. No. 15 at 15.) However, Dr. Voorhies, the operating surgeon, did not diagnose spinal arachnoiditis. Rather, Martin's post operative diagnosis was lumbar foraminal stenosis at L3-4, L4-5, and L5-S1 with radiculopathy. (Tr. 510.) Under the Listing, documentation of a spinal arachnoiditis diagnosis, by either operative note or biopsy, is required. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Dr.

---

associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

\*\*\*

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.

Voorhies' notation of arachnoid twitching around some scar tissue does not constitute a diagnosis of spinal arachnoiditis and no other physician has offered such a diagnosis. *See Lawson v. Comm'r of Soc. Sec.*, 192 Fed. App'x 521, 529-530 (6th Cir. 2006)(finding a claimant cannot meet Listing 1.04B when they do not demonstrate the strict diagnostic requirement of spinal arachnoiditis).

In the alternative, Martin contends his condition is "medically equivalent" to spinal arachnoiditis and the ALJ erred by failing to consult a medical expert before determining his back impairment did not equal Listing 1.04B. (Doc. No. 15 at 13-15). Prior to the hearing, Martin did not submit a brief arguing he met or equaled the requirements of Listing 1.04B. Similarly, the hearing transcript is devoid of any argument Martin's back problems reached listing-level severity or that the ALJ should consult a medical expert. Indeed, Martin, through counsel, asserted the record before the ALJ was complete. (Tr. 72.) It was not until submitting a brief to the Appeals Council Martin argued, for the first time, the ALJ erred by failing to consult a medical expert in determining his back impairment did not equal Listing 1.04. (Tr. 305.) *See Baker v. Colvin*, 2015 WL 5055567, *14 (N.D. Ohio Aug. 25, 2015)(noting without a request from claimant for medical expert testimony, an ALJ may reasonably conclude the record is complete).

At the outset, the Court notes the ALJ was not required to consult with a medical expert before making a finding Martin did not meet or equal the requirements of a listed impairment. *O'Neill v. Colvin*, 2014 WL 3510982, *18 (N.D. Ohio July 9, 2014)("ALJs retain discretion as to whether to call a medical expert."). Federal regulations allow ALJs to call a medical expert to explain medical records but do not require them to do so. 20 C.F.R. § 404.1513a(b)(2). When

"the record contains sufficient evidence for the ALJ to decide a disability claim absent expert medical testimony, failure to call a medical expert will not support remand." *Snyder v. Comm'r of Soc. Sec.*, 2014 WL 6687227, *11 (N.D. Ohio Nov. 26, 2014).

Moreover, it is Martin's burden to prove he has an impairment or combination of impairments which medically equals a Listing. *Lusk v. Comm'r of Soc. Sec.*, 106 Fed. App'x 405, 411 (6th Cir. 2004). Indeed, Martin "must present specific medical findings that his impairment meets the applicable impairment or present medical evidence that describes how his impairment is equivalent to a listed impairment." *Id. See also Blanton v. Social Sec. Adm.*, 118 Fed. App'x 3, 6 (6th Cir. 2004)("It is a claimant's burden at the third step of the evaluation process to provide evidence that she meets or equals a listed impairment."). Beyond citing to a November 16, 2015 operative note and his own allegations of difficulty remaining in the same position, Martin offers no explanation as to how he equals Listing 1.04B. (*See* Doc. No. 15 at 14-17.) Further, the state agency physicians who reviewed Martin's file found he did not meet or equal Listing 1.04. (Tr. 103, 116.) Because state agency physicians are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," their opinions regarding medical equivalence may be adopted by the ALJ. *See* 20 C.F.R. §§ 404.1513a(b)(1). *See also O'Neill*, 2014 WL 3510892 at *18. Thus, the Court finds the ALJ's conclusion Martin did not meet or equal Listing 1.04B supported by substantial evidence.

Accordingly, the Court finds Martin has not satisfied his burden of demonstrating the ALJ erred in finding he did not meet or equal Listing 1.04B.

### B.     RFC/DDS opinions

In his fourth assignment of error, Martin argues the severity of his "pain symptoms should be considered disabling, preventing sustained, remunerative employment at any physical demand level[4] of work-related activity."  (Doc. No. 15 at 17, 18.)  He asserts "the multiple of medical findings reveal that [he] has undergone both conservative treatment and surgical intervention without significant resolution of pain and other related symptoms."  (*Id.* at 18.)  Martin maintains the ALJ erred in giving great weight to the state agency physicians' RFC assessments, as a November 2015 surgical note, which was not in existence at the time of their opinions, demonstrate "the severity of [his] lumbar spine condition."  (*Id.* at 11.)  He concludes the "ALJ succumbed to the temptation of playing doctor and made his/her own independent medical findings despite the uncontroverted medical operative findings."  (*Id.*)

The Commissioner maintains "the mere fact that [Martin] underwent a back surgery after [the state agency physicians] gave their opinions does not render their opinions outdated." (Doc. No. 16 at 19.)  The Commissioner notes the ALJ "acknowledged that additional evidence entered into the record after the state agency doctors rendered their opinions," and argues Martin "fails to explain how the [November 2015 surgical notes] are inconsistent with the ALJ's findings or how they demand greater limitations" than assessed by the ALJ in the RFC.  (*Id.*)

---

[4]     Though not entirely clear, it appears Martin is arguing the ALJ should have assessed a more restrictive RFC, based upon his November 2015 surgical note and allegations of pain.  The Court will construe this assignment of error as an RFC argument.  While the evaluation of pain could be viewed as an argument the ALJ erred in her credibility assessment, Martin has cited to no law or made any argument regarding credibility.  Thus, the Court will not consider the issue of credibility any further.

The Commissioner asserts "substantial evidence supports the ALJ's evaluation of [Martin's] pain complaints and her RFC determination." (*Id.* at 15.)

The RFC determination sets out an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 416.927(d)(2).[5] An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R.§ 416.927(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 416.946(c). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105 at * 7 (W.D. Mich. Mar. 26, 2012) (citing *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 880 (N.D. Ohio 2011) (citing *Bryan v. Comm'r of Soc. Sec.*, 383 Fed. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). *See also* SSR 96–8p, at *7

---

[5] Revised versions of these regulations took effect on March 27, 2017 and apply to disability claims filed on or after that date. *See* 82 Fed. Reg. 5844 (March 27, 2017)..

("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")). While the RFC is for the ALJ to determine, however, it is well established that the claimant bears the burden of establishing the impairments that determine his RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

Here, at step two, the ALJ determined Martin suffered from the severe impairments of "musculoskeletal conditions involving the left knee; cervical, thoracic, and lumbar spines; right wrist; and rheumatoid arthritis as well as status post right shoulder arthroscopy." (Tr. 130.) After determining Martin's impairments did not meet or equal the requirements of a Listing, the ALJ proceeded, at step four, to consider the medical and opinion evidence regarding Martin's physical impairments. (Tr. 130-135.) Of particular relevance, the ALJ discussed Martin's allegations of lower back pain which radiated into his legs. (Tr. 132.) She acknowledged Martin's testimony that he was unable to stand or sit for greater than 20-30 minutes due to intense pain. (Tr. 134.) The ALJ noted Martin reported his two back operations did not completely relieved his symptoms. (Tr. 132.) The ALJ also acknowledged Martin was scheduled to undergo a nerve stimulator trial. (*Id.*) The ALJ discussed Martin's MRI results and back surgeries. (Tr. 133.) She noted Martin displayed a decreased lumbar range of motion, but a normal gait. (Tr. 133-134.) The ALJ also reviewed Martin's reported activities of daily living and the opinion evidence contained in the record. (Tr. 134-135.)

The ALJ formulated the following RFC for the period of June 15, 2013 through February 18, 2015:

> After careful consideration of the entire record, the undersigned finds that from the alleged disability onset date of June 15, 2013 to February 18, 2015,

the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could frequently climb ramps and stairs and stoop. The claimant could occasionally climb ladders, ropes, scaffolds, and crawl.

(Tr. 131.)

The ALJ also formulated the following RFC for the period of February 19, 2015 through the date of the administrative decision:

The undersigned also finds that from February 19, 2015 to the present, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally push and pull with the right upper extremity. He can occasionally reach overhead and in front on the right. He can frequently climb ramps and stairs, balance, kneel, and crouch. He can never climb ladders, ropes, and scaffolds. He can occasionally stoop and crawl. He can never be exposed to unprotected heights, dangerous moving mechanical parts, or operate a motor vehicle.

(*Id.*)

The Court finds the ALJ's RFCs are supported by substantial evidence. As discussed *supra*, MRIs and x-rays have established degenerative changes, disc protrusions, neural foraminal narrowing, foraminal stenosis, and foramen compression in the lumbar spine. (Tr. 357, 359, 511.) However, as noted by the ALJ, Martin has undergone two surgeries on his lower back, with some degree of improvement. (Tr. 133, 480, 510.) Following a fall in January 2016, Martin reported a recurrence of radicular pain and paresthesia. (Tr. 502, 508.) However, an updated MRI was negative for any significant stenosis "that could be causing this worsening radicular pain" and the foramina and spinal canal were both patent. (Tr. 503.) Treatment notes do confirm a reduced range of motion and tenderness in the lumbar spine, but often indicated normal strength, no sensory deficits, and a normal gait. (Tr. 565, 564, 544, 503, 480, 487, 400.) The ALJ throughly noted many of these objective findings and discussed the surgeries and

diagnostic testing in the decision. (Tr. 133-135.) The ALJ also accounted for Martin's allegations of pain and paresthesia, by limiting him to light work with many postural and environmental restrictions, even taking the time to assess a second RFC to account for the development of Martin's right shoulder problems. (Tr. 131.)

While Martin asserts his "pain symptoms should be considered disabling," he does not offer any specific limitations the ALJ should have assessed in the RFC. (Doc. No. 15 at 17.) Martin cites to the operative report from his second surgery and several office treatment notes he believes support a finding of disability. (*Id*. at 12.) However, he does not explain how these treatment notes and operative report are inconsistent with the RFC assessed by the ALJ, or what limitations should have been included due to this medical evidence. Moreover, the findings of the ALJ "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001). Indeed, the Sixth Circuit has made clear an ALJ's decision "cannot be overturned if substantial evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 477 (6th Cir. 2003). In this case, the ALJ clearly articulated her reasons for finding Martin capable of performing work as set forth in the RFC and these reasons are supported by substantial evidence. Accordingly, Martin's vague assertion his "pain symptoms should be considered disabling" is without merit.

In addition, Martin maintains remand is required because the ALJ erred in assigning great weight to the opinions[6] of reviewing state agency physicians. He argues they did not have the complete medical record when conducting their review, particularly his November 2015 operative note. (Doc. No. 11 at 15.) However, this argument is "contrary to agency regulations, which state that 'administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled.'" *McGrew v. Comm'r of Soc. Sec.*, 343 Fed. App'x 26, 32 (6th Cir. Aug. 19, 2009)(citing 20 C.F.R. § 404.1527(f)(2)(I))[7]. Moreover, it is proper for an ALJ to credit a state agency consultant's opinion when it is "supported by the totality of evidence in the record, and the ALJ considered the evidence obtained after the consultant issued his opinion." *Myland v. Comm'r of Soc. Sec.*, 2017 WL 5632842 at *2 (6th Cir. Nov. 13, 2017). *See also Ruby v. Colvin*, 2015 WL 1000672 at *4 (S.D. Ohio Mar. 5, 2015)("[S]o long as an ALJ considers additional evidence occurring after a state agency physician's opinion, he has not abused his discretion."). Here, Martin does not argue the ALJ failed to consider the evidence post-dating the opinions of the reviewing state agency

---

[6]     Martin also accuses the ALJ of "playing doctor" and making her "own independent medical findings." (Doc. No. 15 at 11.) However, an ALJ is not "playing doctor" when formulating an RFC and making a disability determination. Indeed, while an ALJ is required to consider and weigh all medical opinions, the RFC determination is ultimately reserved for the Commissioner. *Lehr v. Comm'r of Soc. Sec.,* 2017 WL 3840419 at *9 (N.D. Ohio Sept. 1, 2017) (citing *Ford v. Comm'r of Soc. Sec.,* 114 Fed. Appx. 194, 198 (6th Cir. 2004)).

[7]      Revised versions of these regulations took effect on March 27, 2017 and apply to disability claims filed on or after that date. *See* 82 Fed. Reg. 5844 (March 27, 2017).

physicians.  Moreover, even if he had, this argument would fail as the ALJ's decision demonstrates she considered the entire record. In the decision, the ALJ included a discussion of the medical evidence post-dating the opinions of the state agency physicians, including the fact Martin had undergone a second back surgery in November 2015.  (Tr. 133-134.)

Accordingly, and for all the reasons set forth above, Martin's first and fourth assignments of error are without merit.

## C.    Sentence Six Remand

Though not raised as a separate assignment of error, the Court notes Martin "requests that this case be remanded to the Commissioner for the necessary consideration of the new, material evidence with 'sentence six' consideration."  (Doc. No. 15 at 19.)  Martin also has attached updated medical records covering the period of May 2017 through February 2018 to his brief.  He cites to these records within his brief.  (Doc. Nos. 15-1 and 15-2, Doc. No. 15 at 13.)  The Commissioner argues a sentence six remand is not appropriate as "this information does not relate to [Martin's] condition during the relevant period."  (Doc. No. 16 at 22.)

The Sixth Circuit has repeatedly held "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  A district court can, however, remand the case for further administrative proceedings in light of such evidence, if a claimant shows the evidence satisfies the standard set forth in sentence six of 42 U.S.C. § 405(g). *Id. See also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996); *Lee v. Comm'r of Soc. Sec.*, 529 Fed. App'x 706, 717 (6th Cir. July 9, 2013) (stating that "we view newly submitted evidence

only to determine whether it meets the requirements for sentence-six remand").  Sentence Six

provides that:

> The court may ... at any time order additional evidence to be taken before
> the Commissioner of Social Security, but only upon a showing that there
> is new evidence which is material and that there is good cause for the
> failure to incorporate such evidence into the record in a prior proceeding;
> and the Commissioner of Social Security shall, after the case is remanded,
> and after hearing such additional evidence if so ordered, modify or affirm
> the Commissioner's findings of fact or the Commissioner's decision, or
> both, and shall file with the court any such additional and modified
> findings of fact and decision, and, in any case in which the Commissioner
> has not made a decision fully favorable to the individual, a transcript of
> the additional record and testimony upon which the Commissioner's action
> in modifying or affirming was based.

42 U.S.C. § 405(g).

Interpreting this statute, the Sixth Circuit has held that "evidence is new only if it was

'not in existence or available to the claimant at the time of the administrative proceeding.' "

*Foster*, 279 F.3d at 357 (quoting *Sullivan*, 496 U.S. at 626).  Evidence is "material" only if "there

is 'a reasonable probability that the Secretary would have reached a different disposition of the

disability claim if presented with the new evidence.'"  *Id.* (quoting *Sizemore v. Sec'y of Health &*

*Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988)).  *See also Bass v. McMahon*, 499 F.3d 506,

513 (6th Cir.2007) (noting that evidence is "material" if it "would likely change the

Commissioner's decision."); *Courter v. Comm'r of Soc. Sec.*, 479 Fed App'x 713, 725 (6th Cir.

May 7, 2012) (same).  Evidence is not material if it is cumulative of evidence already in the

record, or if it merely shows a worsening condition after the administrative hearing.  *See Prater*

*v. Comm'r of Soc. Sec.*, 235F. Supp.3d 876, 880 (N.D. Ohio Feb. 14, 2017).  *See also Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir.2003); *Sizemore*, 865 F.2d at 712 ("Reviewing

courts have declined to remand disability claims for reevaluation in light of medical evidence of

a deteriorated condition"); *Deloge v. Comm'r of Soc. Sec.*, 2013 WL 5613751 at * 3 (6th Cir. Oct.15, 2013) (same).

In order to show "good cause," a claimant must "demonstrat[e] a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster,* 279 F.3d at 357. *See also Willis v. Sec'y of Health & Hum. Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter,* 479 Fed. App'x at 725. Rather, the Sixth Circuit "takes 'a harder line on the good cause test' with respect to timing, and thus requires that the clamant 'give a valid reason for his failure to obtain evidence prior to the hearing.'" *Id.* (quoting *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986)). This includes "detailing the obstacles that prevented the admission of the evidence." *Courter,* 479 Fed App'x at 725. *See also Bass*, 499 F.3d at 513.

The burden of showing that a remand is appropriate is on the claimant. *See Foster*, 279 F.3d at 357; *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). When a district court grants remand pursuant to sentence six, it "neither affirm[s] nor reverse[s] the ALJ's decision, but simply remand [s] for further fact-finding." *Courter*, 479 Fed App'x at 725. *See also Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Under these circumstances, the district court retains jurisdiction and enters final judgment only "after postremand agency proceedings have been completed and their results filed with the court." *Shalala v. Schaefer*, 509 U.S. 292, 297, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). *See also Melkonyan*, 501 U .S. at 98; *Marshall v. Comm'r of Soc. Sec.*, 444 F.3d 837, 841 (6th Cir. 2006).

As an initial matter, the Court notes none of the evidence attached to Martin's brief was submitted to the Appeals Council for review. (*See* Tr. 16-69.) Moreover, as for the evidence which was submitted to the Appeals Council, Martin has not cited to nor has he made any arguments as to why it should be considered. (*See* Doc. Nos. 15, 17.) Therefore, the Court will not consider the evidence submitted to the Appeals Council when determining if a sentence six remand is warranted, as Martin has not met his burden. *See Foster*, 279 F.3d at 357.

Turning to the new evidence attached to Martin's brief, the Court finds Martin has not demonstrated a sentence six remand is appropriate. This evidence is "new," as it post-dates both the administrative hearing and the ALJ decision. *See Cross v. Comm'r of Soc. Sec.,* 373 F.Supp.2d 724, 734 (N.D. Ohio June 14, 2005). However, Martin must also demonstrate the materiality of this evidence. Martin has provided no argument or explanation as to how this evidence would have created a "reasonable probability that the ALJ would have rendered a different decision." *Id.* at 734. In his brief, Martin simply requests "'sentence six' consideration" and references this evidence to support his argument he continues to experience pain and receive treatment. (Doc. No. 15 at 13, 19.) Moreover, Martin also has not provided any argument to meet his burden of establishing "good cause."

In sum, the Court finds Martin has failed to carry his burden of demonstrating the need for a sentence six remand. As Martin has provided no argument or explanation as to why a sentence six remand is required, it is completely inappropriate for this Court to review this evidence or even consider Martin's references to it within his brief.

### VII.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED.**

 _s/Jonathan D. Greenberg_
Jonathan D. Greenberg
United States Magistrate Judge

Date: November 26, 2018